# In the United States Court of Federal Claims

No. 21-896C

(Filed: March 30, 2021)

**MICROGENICS CORPORATION,**

Plaintiff,

**v.**

**UNITED STATES,**

Defendant,

**and**

**SIEMENS HEALTHCARE DIAGNOSTICS, INC.,**

Defendant-Intervenor.

Post-award protest of a contract issued by the Administrative Office of the United States Courts; jurisdiction; 28 U.S.C. § 1491(b)(1); 28 U.S.C. § 451

Richard J. Webber, Arent Fox LLP, Washington, D.C., for plaintiff Microgenics Corporation. With him on the brief were Kevin Pinkney and Travis L. Mullaney, Arent Fox LLP, Washington, D.C.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States. With her on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, United States Department of Justice, Washington, D.C., and Michael K. Greene, Assistant General Counsel, Office of the General Counsel, Administrative Office of the United States Courts, Washington, D.C.

Jeffery M. Chiow, Rogers Joseph O'Donnell, PC, Washington, D.C., for defendant-intervenor Siemens Healthcare Diagnostics, Inc. With him on the briefs were Robert S. Metzger, Stephen L. Bacon, and Eleanor M. Ross, Rogers Joseph O'Donnell, PC, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Plaintiff Microgenics Corporation ("Microgenics") protests an award by the Administrative Office of the United States Courts ("AOUSC" or "Administrative Office") of a contract for equipment, supplies, and consumables used to operate on-site drug testing laboratories. Pending before the court in this post-award bid protest are defendant's and defendant-intervenor's motions to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 28; Def.-Intervenor's Mot. to Dismiss ("Def.-Intervenor's Mot."), ECF No. 27. After briefing, *see* Pl.'s Resp., ECF No. 32; Def.'s Reply, ECF No. 34; Def.-Intervenor's Reply, ECF No. 33, the court held a hearing on March 17, 2021.

For purposes of the court's jurisdiction over bid protests pursuant to 28 U.S.C. § 1491(b)(1), the court concludes that the AOUSC is not an "agency" as defined by 28 U.S.C. § 451. Therefore, the court lacks jurisdiction over Microgenics' protest. Defendant's and defendant-intervenor's motions to dismiss are GRANTED.

## BACKGROUND[1]

The AOUSC, an entity within the judicial branch, is a product of legislative creation. *See* 28 U.S.C. § 601. The Administrative Office "provides a broad range of legislative, legal, financial, technology, management, administrative, and program support services to federal courts." *Judicial Administration*, UNITED STATES COURTS, https://www.uscourts.gov/about-federal-courts/judicial-administration (last visited March 29, 2021). As "the administrative officer of the courts," the Director of the AOUSC is responsible for "enter[ing] into and perform[ing] contracts and other transactions upon such terms as the Director may deem appropriate." 28 U.S.C. § 604(a)(10)(C).

On September 4, 2020, the AOUSC issued Solicitation No. USCA20R0151 for the provision of "equipment, supplies, and consumables necessary to successfully operate and maintain on-site district [drug testing] laboratories." Compl. Ex. A at 2, 6, ECF No. 1-1. Specifically, the solicitation required the successful bidder to provide "automated analyzers, forensic use immunoassay reagents, controls, calibrators, all supplies and consumables necessary to operate the analyzers; maintenance of the analyzers; training; water systems; quality control, and a data management system with the capability to export results to" laboratories of the United States Probation and Pretrial Services Offices. *Id.* at 6. The solicitation also stated that the award would be made to "the lowest priced technically acceptable offer." *Id.* at 31. After receiving initial proposals from Microgenics and Siemens, the AOUSC conducted two rounds of discussion with the offerors. Compl. ¶ 70; Def.-Intervenor's Mot. at 2. The Administrative Office amended the solicitation four times, eventually setting November 30, 2020, as the submission deadline for revised proposals. *See* Compl. Exs. B-E, ECF Nos. 1-2 to 1-5. Microgenics and Siemens submitted their final proposals on November 24, 2020. *See* Compl. ¶¶ 78-81; Def.-Intervenor's Mot. at 2.

---

[1] The recitations that follow do not constitute findings of fact, but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the complaint and briefs.

On December 1, 2020, the AOUSC awarded the contract to Siemens and provided notice to Microgenics of the award. *See* Compl. Ex. H, ECF No. 1-8; Compl. ¶ 82. Pursuant to the Guide to Judiciary Policy, Microgenics timely requested an award debriefing. *See* Compl. ¶ 84; *see also* UNITED STATES COURTS, GUIDE TO JUDICIARY POLICY, Vol. 14, § 330.73 (2020). The Administrative Office debriefed Microgenics on December 9, 2020. Compl. ¶ 85. Five days later, Microgenics filed a bid protest at the Government Accountability Office ("GAO"). Compl. ¶ 86; *Microgenics Corp.*, B-419470, 2021 WL 494646, at *2 (Comp. Gen. Feb. 2, 2021). After acknowledging its jurisdiction "to resolve bid protests concerning solicitations and contract awards that are issued 'by a Federal agency,'" *Microgenics*, 2021 WL 494646, at *2 n.4, GAO dismissed the protest as untimely, *id.* at *7. GAO explained that the debriefing provided by the AOUSC to Microgenics was not "required" under GAO's regulations. *Id.* Therefore, Microgenics could not rely on the "debriefing exception" in filing more than ten days after it "knew or should have known of [its] basis of protest." *Id.*

On February 8, 2021, Microgenics filed suit in this court, *see* Compl., and Siemens subsequently moved to intervene, *see* Mot. to Intervene, ECF No. 14, which motion the court granted, Order of Feb. 9, 2021, ECF No. 15. Microgenics moved for a preliminary injunction, *see* Pl.'s Mot. for a Prelim. Inj., ECF No. 4, but the court deferred ruling on the motion to consideration of the merits, *see* Order of Feb. 11, 2021, ECF No. 18. The government and Siemens moved to dismiss the complaint on February 22, 2021. *See* Def.'s Mot.; Def.-Intervenor's Mot.

**STANDARDS FOR DECISION**

The Tucker Act vests this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Accordingly, this court's jurisdiction over bid protests is limited to those involving contract awards made "by a Federal agency." *Id.*

Microgenics, as plaintiff, must establish jurisdiction by a preponderance of the evidence. *See Trusted Integration, Inc. v. United States,* 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988)). When ruling on the government's motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995)). "If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law." *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**ANALYSIS**

In their respective motions to dismiss, the government and Siemens assert that this court lacks jurisdiction over Microgenics' protest because the AOUSC is not a "Federal agency" under 28 U.S.C. § 1491(b)(1). *See* Def.'s Mot. at 5-12; Def.-Intervenor's Mot. at 5-9. Microgenics, the government and Siemens claim, has failed to establish that the AOUSC falls under the definition of "agency" provided in 28 U.S.C. § 451. *See* Def.'s Mot. at 5-6; Def.-Intervenor's Mot. at 4-5. Microgenics, in turn, counters that the AOUSC is a "Federal agency" under 28 U.S.C. § 1491(b)(1) because it qualifies as one of the entities listed in 28 U.S.C. § 451. Compl. ¶¶ 11-12; Pl.'s Resp. at 6-9.

*I. The Statutory Basis for Jurisdiction Over Bid Protests*

"While Title 28 of the United States Code does not define '[F]ederal agency,' it does define 'agency.'" *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001). Under 28 U.S.C. § 451, "[t]he term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451. Therefore, if Microgenics' bid protest is to be considered "an action by an interested party objecting to . . . the award of a contract" by "a Federal agency," *id.* § 1491(b)(1), the AOUSC must qualify as one of the entities listed in Section 451, *see Emery*, 264 F.3d at 1080 (concluding that "'federal agency' as used in 28 U.S.C. § 1491(b)(1) falls within the ambit of 'agency' as used in 28 U.S.C. § 451"). While Microgenics asserts that the AOUSC qualifies as an "agency" under Title 5, Pl.'s Resp. at 9, and that the AOUSC "holds itself out to the public as an 'agency,'" *id.* at 9 n.2, the relevant definition of "agency" is found in 28 U.S.C. § 451, *see Emery*, 264 F.3d at 1080.[2]

The court concludes that traditional methods of statutory interpretation guide its decision. On that basis, the court ultimately finds that the AOUSC cannot be characterized as any of the entities listed in Section 451. The court therefore lacks jurisdiction over Microgenics' claims, as the AOUSC is not a "Federal agency" as the term is used in Paragraph 1491(b)(1) of the Tucker Act.

---

[2] Microgenics advances the argument that the government's representation of the AOUSC operates as a concession "that the AOUSC constitutes an 'agency' under 28 U.S.C. § 451." Pl.'s Resp. at 11-12. Given that the authority of the Department of Justice extends to "litigation in which the United States, an agency, or officer thereof is a party, or is interested," 28 U.S.C. § 516, Microgenics contends that defendant's appearance in this case indicates that the AOUSC is an agency for jurisdictional purposes. *Id.* at 12 (citing 28 U.S.C. § 516). This argument ignores the full scope of the Department of Justice's authority. "[T]he Department of Justice has a duty of representation in suits filed in the Court of Federal Claims in which the United States is interested." Def.'s Reply at 11 (citing 28 U.S.C. § 518). The United States certainly has an interest in litigation over bid protests involving the AOUSC. The government's appearance in a case "in which the United States . . . is interested" thus does not operate as a concession that the AOUSC is an "agency" under Section 451. 28 U.S.C. § 516.

*A. Whether the AOUSC Is an "Independent Establishment" Under 28 U.S.C. § 451*

Microgenics first argues that this court has jurisdiction over its claims because the AOUSC qualifies as an "establishment" under 28 U.S.C. § 451. Compl. ¶ 11; Pl.'s Resp. at 7-8. The government emphasizes that an establishment must be an "*independent* establishment" to be considered an agency under Title 28. Def.'s Mot. at 8-12 (quoting 28 U.S.C. § 451) (emphasis added). Siemens further adds that "'independent establishment' is a legislative term of art that has been used by Congress on various occasions to describe *executive* branch entities." Def.-Intervenor's Mot. at 7 (emphasis in original).

"It is . . . 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 489 n.13 (2004) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)) (in turn quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). In arguing that the AOUSC is an "establishment," therefore, Microgenics must prove that the entity is an "*independent* establishment" as specified by the plain text of Section 451. 28 U.S.C. § 451 (emphasis added); *see also Emery*, 264 F.3d at 1080 (concluding that the United States Postal Service, "statutorily defined as an '*independent* establishment of the executive branch of the United States[,]' . . . is an 'agency' for purposes of 28 U.S.C. § 451") (quoting 39 U.S.C. § 201) (emphasis added).

In contrast to entities such as the United States Postal Service and the Office of Personnel Management, the AOUSC is not statutorily defined as an "independent establishment." *Compare* 39 U.S.C. § 201 ("There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service."), *and* 5 U.S.C. § 1101 ("The Office of Personnel Management is an independent establishment in the executive branch."), *with* 53 Stat. 1223 ("There shall be at the seat of government an establishment to be known as the Administrative Office of the United States Courts.").

Microgenics proposes looking beyond Section 451 "to procurement statutes for relevant 'context' to inform the meaning of 28 U.S.C. § 451," namely 40 U.S.C. § 102(5). Pl.'s Resp. at 7-8. However, "this court, unlike . . . GAO and [the General Services Board of Contract Appeals], does not derive its bid-protest jurisdiction from a federal procurement law." *Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 104 (1998). Furthermore, 40 U.S.C. § 102(5) cannot be reconciled with the plain language of 28 U.S.C. § 451. Section 102(5) defines "Federal agency" as "an executive agency or an establishment in the legislative or judicial branch of the Government." 40 U.S.C. § 102(5). While the AOUSC would appear to qualify as a "Federal agency" under this definition, the lack of the term "*independent* establishment" is conspicuous. To resort to this broader definition of "Federal agency" in Subsection 102(5) would render the word "independent" in Section 451 "superfluous, void, or insignificant." *Alaska Dep't of Env't Conservation*, 540 U.S. at 489 n.13 (citations omitted).

Microgenics points to cases in which the Smithsonian Institute was deemed an "independent establishment" despite "the lack of the word 'independent' in its creation statute." Pl.'s Resp. at 8 (citing *O'Rourke v. Smithsonian Inst. Press*, 399 F.3d 113, 116 (2d Cir. 2005); *Dolmatch Grp., Ltd. v. United States*, 40 Fed. Cl. 431 (1998)). This argument, however,

overlooks the fact that these cases were not bid protests under Paragraph 1491(b)(1). *O'Rourke* addressed subject-matter jurisdiction over copyright infringement claims brought against the United States. *O'Rourke*, 399 F.3d at 122-23. *Dolmatch*, in turn, involved "a dispute arising from an alleged contract between plaintiff and the Smithsonian Institution to distribute videotaped Smithsonian programs." *Dolmatch*, 40 Fed. Cl. at 432. The lack of the phrase "independent establishment" in the AOUSC's foundational statute, when compared to other statutes expressly establishing such entities in the federal government, leads the court to conclude that Microgenics has failed to show by a preponderance of evidence that the AOUSC is an "independent establishment" under Section 451.

*B. Whether the AOUSC Is an "Administration" Under 28 U.S.C. § 451*

Microgenics contends that the AOUSC is an "administration" under 28 U.S.C. § 451 because Congress used the term "administration" when it created the entity. *See* Compl. ¶ 12; Pl.'s Resp. at 6-7. The government avers that Congress nevertheless failed to designate the AOUSC as an administration because the word is not used in its title. *See* Def.'s Mot. at 6-8. Siemens argues that the AOUSC cannot be an administration because "an 'administration' is overseen by the executive branch." Def.-Intervenor's Mot. at 9 (footnote omitted).

One prominent difference between the AOUSC and administrations such as the Federal Aviation Administration and the Transportation Security Administration is evident in the founding statutes for these entities. While Congress expressly provided that "[t]he Federal Aviation Administration *is an administration* in the Department of Transportation," 49 U.S.C. § 106(a) (emphasis added), and that "the Transportation Security Administration *shall be an administration* of the Department of Homeland Security," *id.* § 114(a) (emphasis added), Congress described the AOUSC as an "establishment," 53 Stat. 1223. Of note, the chapter in which Congress created the AOUSC is titled, "The Administration of the United States Courts." *Id.* However, Congress appears to have used the word "administration" in this context to refer to "the act or process of administering something," not "a body of persons who administer." *Administration*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/administration (last visited March 29, 2021). In short, Congress created the AOUSC not as an administration, but as an "establishment" which "provide[s] for the administration of the United States courts." 53 Stat. 1223. To adopt Microgenics' view of the word "administration" would be to change the meaning of the word as it is used in 53 Stat. 1223. The court thus concludes that the AOUSC is not an "administration" under 28 U.S.C. § 451.

*C. Whether the AOUSC Is a "Department" Under 28 U.S.C. § 451*

In its response to defendants' motions to dismiss, Microgenics adds that the AOUSC should be viewed as a "department" under 28 U.S.C. § 451 because the Classification Act of 1949 included the AOUSC within its definition of "department." Pl.'s Resp. at 8-9 (citing 63 Stat. 954).[3] The government and Siemens aver that the Classification Act itself and Section 451 refute Microgenics' position. Def.'s Reply at 6; Def.-Intervenor's Reply at 10-11.

[3] The Classification Act reads:

The court agrees with defendants that the Classification Act's definition of "department" is not determinative of whether this court possesses jurisdiction over Microgenics' claims. First, the Classification Act specifies that its definition of "department" is "[f]or the purposes of this Act." 63 Stat. 954. Second, as noted by the government and Siemens, 28 U.S.C. § 451 provides its own specific and particular definition: "[t]he term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government." 28 U.S.C. § 451. "When a statute includes an explicit definition," this court "must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (citing *Meese v. Keene*, 481 U.S. 465, 484-85 (1987)) (additional citations omitted). Microgenics has not shown that the AOUSC is a "department" as defined by the relevant statute, Section 451.

*D. Whether the AOUSC Is an "Authority" Under 28 U.S.C. § 451*

Microgenics further contends in its response to defendants' motions that "the AOUSC qualifies as an 'authority' because it is subject to the Administrative Procedure Act." Pl.'s Resp. at 10 (citing *Goldhaber v. Foley*, 519 F. Supp. 466, 480 (E.D. Pa. 1981)). This statute defines "agency" as "each *authority* of the Government of the United States," but excludes "the courts of the United States" from this definition. 5 U.S.C. § 551(1)(B) (emphasis added). The government and Siemens point to other judicial decisions holding that the AOUSC is excluded from the Administrative Procedure Act. Def.'s Reply at 7-8; Def.-Intervenor's Reply at 11-12.

While *Goldhaber* provides support for Microgenics' position, it must be considered alongside "the legislative history and judicial precedent indicating that Congress has not yet chosen" to "subject the AOUSC to review under the [Administrative Procedure Act]." *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 26 (D.D.C. 2000). "If legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the [g]overnment to be excluded from the provisions of the Administrative Procedure Act." *In re Fidelity Mortg. Invs.*, 690 F.2d 35, 38 (2d Cir. 1982) (citing *Wacker v. Bisson*, 348 F.2d 602, 608 n.18 (5th Cir. 1965)). Given that "virtually every case interpreting the [Administrative Procedure Act] exemption for 'the courts of the United States' has held that the exemption applies to the entire judicial branch—at least to entities within the judicial branch that perform functions that would otherwise be performed by courts," Microgenics falls short of establishing that the AOUSC is subject to this Act and that it qualifies, by extension, as an "authority" under

---

> For the purposes of this Act, the term "department" includes (1) the executive departments, (2) the independent establishments and agencies in the executive branch, including corporations wholly owned by the United States, (3) the Administrative Office of the United States Courts, (4) the Library of Congress, (5) the Botanic Garden, (6) the Government Printing Office, (7) the General Accounting Office, (8) the Office of the Architect of the Capitol, and (9) the municipal government of the District of Columbia.

63 Stat. 954.

28 U.S.C. § 451. *Washington Legal Found. v. United States Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.D.C. 1994).[4]

*E. Synopsis*

Based upon the governing statutory texts, the court does not have jurisdiction over bid protests involving procurements made by the AOUSC. This result is consistent with the outcomes in the prior decisions of this court rendered in *U.S. Sec. Assocs. v. United States*, 124 Fed. Cl. 433 (2015), and *Novell, Inc. v. United States*, 46 Fed. Cl. 601 (2000), albeit on related but somewhat different rationales.[5]

---

[4] In addition to arguing that the AOUSC qualifies as one of the entities listed in 28 U.S.C. § 451, Microgenics contends that this court should recognize the AOUSC as an "agency" under the rule of *ejusdem generis*. Hr'g Tr. 49:11-24 (Mar. 17, 2021). "Under the rule of *ejusdem generis*, where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980). Microgenics overlooks the baseline requirement for applying this rule. While the AOUSC may be similar in some respects to the entities listed under Section 451, the rule of *ejusdem generis* is not necessarily used to infer an item omitted from a list. *See Harrison,* 446 U.S. at 588 (examining the "specifically enumerated provisions" in Section 307(b)(1) of the Clean Air Act). As it happens, 28 U.S.C. § 451 indicates a restriction rather than a potential broadening of the terms referenced, through the additive clause "unless context shows that such term was intended to be used in a more limited sense." In sum, here Microgenics' argument is foreclosed by the doctrine of *expressio unius est exclusio alterius*, which, "as applied to statutory interpretation[,] creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (citing *Boudette v. Barnette*, 923 F.2d 756-57 (9th Cir. 1991)).

[5] Microgenics in part relies upon two decisions recognizing this court's jurisdiction over bid protests challenging awards by legislative entities. *See* Pl.'s Resp. at 19-20 (citing *Bell BCI Co. v. United States*, 56 Fed. Cl. 465 (2003), and *Colonial Press Int'l, Inc. v. United States*, 113 Fed. Cl. 497 (2013)). Notably, in holding that subject-matter jurisdiction existed over a bid protest involving the Architect of the Capitol, the court in *Bell BCI* concluded that the government "ha[d] not shown that the Architect of the Capitol is a Legislative Branch entity; or that if it is, that the Architect would be excluded from this court's jurisdiction." *Bell BCI*, 56 Fed. Cl. at 470. That decision is in some tension with *Emery*, in which the Federal Circuit's analysis turned on whether the United States Postal Service qualified as one of the entities listed under 28 U.S.C. § 451. *Emery*, 264 F.3d at 1080. *Colonial Press* similarly held that the Court of Federal Claims' jurisdiction under 28 U.S.C. § 1491(b)(1) extended to the Government Printing Office, "a legislative agency." *Colonial Press*, 113 Fed. Cl. at 518. Although the court acknowledges, but has doubts about some aspects of the analysis in *Bell BCI* and *Colonial Press* in application to the circumstances at hand, this case is readily distinguishable from them as the AOUSC is an entity in the judicial branch. *See* 28 U.S.C. § 601.

*II. The Separate Basis of GAO's Jurisdiction Over Bid Protests*

This jurisdictional decision does not leave the protestor without a remedy. Although the Tucker Act does not vest this court with jurisdiction over bid protests involving the AOUSC, the Competition in Contracting Act ("CICA") permits GAO to hear such claims. CICA establishes that GAO has jurisdiction to resolve bid protests involving a "solicitation . . . by a Federal agency for offers for a contract for the procurement of property or services." 31 U.S.C. § 3551(1)(A). "The term 'Federal agency'" as used in CICA "has the meaning given such term by section 102 of title 40." *Id.* § 3551(3). Section 102 defines "Federal agency" as "an executive agency or an establishment in the legislative or judicial branch of the Government (except the Senate, the House of Representatives, and the Architect of the Capitol, and any activities under the direction of the Architect of the Capitol)." 40 U.S.C. § 102(5). Thus, GAO's jurisdiction over bid protests involving federal agencies differs from this court's jurisdiction because GAO is bound to a different definition of "Federal agency." *Compare* 40 U.S.C. § 102(5), *with* 28 U.S.C. § 451; *see also Novell*, 46 Fed. Cl. at 613 ("Even though AOUSC is not subject to the [c]ourt's protest jurisdiction, it remains subject to GAO['s] protest jurisdiction.").

**CONCLUSION**

For the reasons stated, the defendants' motions to dismiss are GRANTED. Microgenics' complaint shall be DISMISSED for lack of subject-matter jurisdiction. The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge